UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE SINGER, and ALYSON SINGER, on behalf of themselves and all other similarly situated persons, known and unknown,<br><br>    Plaintiffs,<br><br>v.<br><br>LOCKPORT BEEF, LLC, ORLAND BEEF, LLC, ROMEOVILLE BEEF, LLC, ELMHURST BEEF, LLC, MOTTO BROTHERS, LLC, MMM PARTNERSHIP LLC, and MICHAEL MOTTO, individually,<br><br>    Defendants. | Case No. 14-CV-0670<br><br>**Judge Virginia M. Kendall**<br><br>Magistrate Judge Jeffrey T. Gilbert |

**AGREED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

  The Court granted preliminary approval of Plaintiffs Michelle Singer and Alyson Singer and Defendants Lockport Beef, LLC, Orland Beef, LLC, Romeoville Beef, LLC, Elmhurst Beef, LLC, Motto Brothers, LLC, MMM Partnership LLC (collectively "Pop's" or "Corporate Defendants"), and Michael Motto (collectively "the Parties") settlement on June 30, 2014. (D.E. 37.) The Parties now seek the Court's final approval of the Parties' settlement. The Court should grant final approval because as discussed herein, the Parties' Agreement satisfies the required class settlement standard. Of the 251 eligible Class Members, *none* filed objections to the Settlement, and *none* sought exclusion from the Settlement. Rather, 117 Class Member, or approximately 47%, made claims – which well exceeds the average claims rate of 10%-25% for these types of cases. Overall, the Settlement provides an excellent result for the Class.

  Final approval of a class action settlement is appropriate where the court determines that a settlement is fair, adequate, and reasonable. Synfuel Techs., Inc. v. DHL Express (USA), Inc.,

463 F.3d 646, 652 (7th Cir. 2005). The results achieved on behalf of the Class in this case comfortably meet this standard. Accordingly, Plaintiffs request that the Court enter an order: (1) granting final approval of the Settlement; (2) finding the Settlement to be fair, reasonable, adequate, and in the best interests of the Class and Collective Members; (3) awarding 1/3 of the common fund to Class Counsel as attorneys' fees and costs; (4) approving the Service Payments to the Named Plaintiffs; (5) releasing and barring any further action on Released Claims under the IMWL and IWPCA by Class Members, none of whom opted out of the Class Settlement; (6) releasing and barring any further action on Released Claims under the FLSA by the Collective members; and (7) dismissing Plaintiffs', the Collective's and the Class Members' claims with prejudice, without any cost to any of the parties except as provided in the Settlement Agreement. (The Parties' proposed "Order Granting Final Approval of Class Settlement" is attached as Exhibit 1.)

## I.  STATEMENT OF FACTS

### A.  Factual and Procedural Background

Plaintiffs allege that Defendants failed to pay a class of current and former hourly employees for all hours worked, including overtime wages. The Corporate Defendants are relatively small Italian Beef stands, with a workforce comprised primarily of college and high school students being paid slightly more than the minimum wage. Plaintiffs alleged that the Corporate Defendants shared common ownership and management, routinely transferred employees, and had a common policy that rounds time to the employees' detriment (hereinafter "rounding policy"). Defendants denied Plaintiffs' allegations and assert that they have complied with all legal requirements in compensating their employees.

After significant informal discovery, direct negotiations, and the exchange of supplemental data, the Parties reached a negotiated settlement of the wage claims in this case, for $150,000 in order to fully and finally settle any and all wage claims resulting from the rounding of employee working time to the employee's detriment, deductions from wages and the failure to pay an overtime premium for hours worked in excess of 40 per week under the FLSA, IMWL, and IWPCA on behalf of all individuals who are currently employed by one of the Defendants in an hourly position or who previously worked at any time between January 30, 2004 and May 22, 2014 for one of the Defendants in a position where the individual's wages were reported to ADP. In addition to the monetary payment, as part of the settlement, Defendants agreed to adopt new timekeeping and payroll policies. Specifically, Defendants agreed to abide by the following policies: (i) each employee is responsible for recording his/her working time on a time card; (ii) employee working time will either be paid accurately to the minute or in 15 minute intervals; (iii) to the extent an individual store decides to pay time based on 15 minute intervals, employees that have worked seven minutes or less of that 15 minute interval will have their time rounded down and employees that have worked eight minutes or more of that 15 minute interval will have their time rounded up; (iv) employees will be paid an overtime premium of time and one-half for all hours worked in excess of 40 hours per week; and (v) no deductions will be made from an employee's wages for the purchase of food unless the employee approves the deduction in writing at the time of purchase.

### B.  The Court's Preliminary Approval Order

On June 24, 2014, Plaintiffs filed their Agreed Motion for Preliminary Approval of Class Settlement. (D.E. 34.) On June 30, 2014, the Court granted preliminary approval of the Parties' proposed Settlement.. (D.E. 37.) The Court specifically found, on a preliminary basis, that the

Settlement is fair and reasonable, appointed Plaintiffs Michelle Singer and Alyson Singer as the class representatives, and appointed Bradley Manewith, Marc J. Siegel, and Alejandro Caffarelli as Class Counsel. (D.E. 37). In addition, the Court appointed Caffarelli & Siegel Ltd., as the Claims Administrator, approved (as to form and content) the proposed Notices of Class Action and Claim Form, and found that the procedures for notifying the Class about the Settlement were adequate, proper, and comported with Due Process. Id. After entry of the Preliminary Approval Order, and pursuant to the terms of the Settlement Agreement, Caffarelli & Siegel Ltd. issued notice to the members of the Class by the means approved by the Court. (Manewith Decl. ¶ 17, attached as Ex. 2; Korzyniewski Decl. ¶ 4, attached as Ex. 3.) At the end of the claims period, 117 Class Members had submitted timely Claim Forms and completed tax documents, representing approximately 47% of the Settlement Class. (Ex. 2 – Manewith Decl. ¶¶ 18, 21; Ex. 3 – Korzyniewski Decl. ¶ 6.) Caffarelli & Siegel also received an additional two timely Claim Forms without the necessary completed tax documents. (Ex. 2 – Manewith Decl. ¶ 19; Ex. 3 – Korzyniewski Decl. ¶ 7.) No Class Members requested exclusion from the Settlement and no Class Members objected to any of the Settlement terms. (Ex. 2 – Manewith Decl. ¶ 20; Ex. 3 – Korzyniewski Decl. ¶ 8.)

## II. PLAINTIFF HAS SATISFIED THE SEVENTH CIRCUIT'S NOTICE REQUIREMENTS

As the District Court found in its Preliminary Approval Order, the notice protocol provided by the Settlement Agreement fully comports with the Rules and Due Process. (D.E. 37 at 1). Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974). In Eisen, the Supreme Court held that notice by mail provides such "individual notice to all

members" in accordance with Rule 23(c)(2). Id. Where the names and addresses of the Class Members are easily ascertainable, as they are here, individual notice through the U.S. Postal Service is "clearly the 'best notice practicable.'" Id. at 175.

Caffarelli & Siegel has fully performed all of its obligations, and the Parties have complied with all terms of this Court's Preliminary Approval Order. Specifically, on July 24, 2014, Caffarelli & Siegel mailed Notice Packets to the 251 Class Members. (Ex. 2 – Manewith Decl. ¶ 17; Ex. 3 – Korzyniewski Decl. ¶ 4.) Caffarelli & Siegel received a total of twenty one Notice Packets returned as undeliverable. (Ex. 3 – Korzyniewski Decl. ¶ 5.) Caffarelli & Siegel performed a skip trace on all of these addresses by using Accurint, which searches Lexis/Nexis' online database of over 34 billion public records. (Ex. 3 – Korzyniewski Decl. ¶ 5.) Caffarelli & Siegel utilized the Class Member's name and previous address for locating a current address. (Ex. 3 – Korzyniewski Decl. ¶ 5.) Nineteen Notice Packets were re-mailed to newfound addresses. (Ex. 3 – Korzyniewski Decl. ¶ 5.) Ultimately, after additional searches, only four Notice Packets were undeliverable because Caffarelli & Siegel was unable to find an accurate address. (Ex. 3 – Korzyniewski Decl. ¶ 5.) The Parties' extensive efforts to effectuate notice to the Class met the requirements of Rule 23(c)(2)(B), comported with due process and this Court's notice requirements.

**III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE**

Settlement of class action litigation is favored by federal courts. Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996). See American International Group, Inc. v. ACE INA Holdings, Inc., Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727, at *11 (N.D. Ill. Feb. 28, 2012) (same). To approve a proposed settlement of a class action under Rule 23, the Court must find that the proposed settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(C); Synfuel,

463 F.3d at 652. Courts in the Seventh Circuit view the facts in the light most favorable to the settlement. Isby, 75 F.3d at 1199. Further, a Court should not substitute its own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. Armstrong v. Bd. of Sch. Dirs., 616 F.2d 305, 315 (7th Cir.1980). In making its determination, a Court should consider the following factors: (1) the strength of Plaintiff's case compared with the terms of the proposed settlement; (2) Defendant's ability to pay; (3) the likely complexity, length, and expense of continued litigation; (4) the amount of opposition to settlement; (5) the opinion of competent counsel; and (6) the stage of proceedings and the amount of discovery completed. See Armstrong, 616 F.2d at 315; Synfuel, 463 F.3d at 653; Isby, 75 F.3d at 1199. Further, a Court must view the settlement in its entirety, rather than focus on any individual component. Isby, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of arm's length negotiations. Hispanics United of DuPage County v. Village of Addison, Illinois, 988 F. Supp. 1130, 1149, n. 6 (N.D. Ill. 1997). When evaluated under these factors, the Parties' Settlement is fair, adequate, and reasonable.

### A. Final Approval of the Settlement is Warranted Based on the Strength of Plaintiffs' Case as Compared to the Value of the Settlement, and Allocation of the Settlement Fund is Reasonable.

The most important consideration is the strength of the Plaintiffs' case compared to the value of the settlement. Synfuel, 463 F.3d at 653. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" EEOC v. Hiram Walker & Sons, Inc., 768 F. 2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to approve the Settlement, this Court should focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiff claims. Id.

If this litigation were to continue, there are a range of possible outcomes, including ones less favorable to the Plaintiffs and the Class. Significant litigation risks remain in maintaining this action as a class action, proving liability, and establishing damages.

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement . . . ." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972). This case is no different in that, prior to beginning negotiations, there was a range of potential settlements that would have been reasonable. The Settlement provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause. See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiff] the expected value of their claim if it went to trial, net the costs of trial"); Hiram Walker & Sons, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Each Claimant's Settlement Payment was calculated pursuant to the formulas set forth in paragraph 8 of the Settlement Agreement, and was included in the notice that each Class Member received. The average lump sum payment to each Claimant under the terms of the Settlement Agreement is approximately $812. This payment is a very significant recovery in light of the fact that most of Defendants' hourly employees earned an hourly rate of less than $10 per hour. It reflects a payment for approximately 81 hours of work, or more than two weeks of pay, for previously uncompensated work time. The Settlement thus ensures that the Claimants will receive significant, tangible monetary relief. Moreover, the Parties also agreed to injunctive relief; specifically, that Defendant would prospectively change its policies and practices so as to

correct any improper rounding of employee time, ensure all employees are properly paid overtime, eliminate any unauthorized deductions from wages. Consequently, these factors support a finding that the Settlement is fair, adequate, and reasonable. See Mars Steele Corp., 834 F.2d at 682.

B. **Final Approval of the Settlement is Warranted in Light of Significant Questions about Defendant's Ability to Pay.**

In determining whether a class settlement is fair and reasonable, courts also look at the defendant's ability to pay. Armstrong, 616 F.2d at 315. Here, there is a serious risk that even if successful at trial, the class would receive nothing because Defendants would be unable to pay a judgment after protracted litigation. Specifically, Corporate Defendants are small family owned Italian beef stands with limited resources. Given their limited finances, bankruptcy is a legitimate concern for Defendants if forced to litigate the case through trial. Thus, it is in the class's best interest to resolve the case now.

C. **Final Approval of the Settlement is Warranted in Light of the Likely Increase in the Complexity, Length, and Expense of Further Litigation.**

Avoiding the delay and risk of protracted litigation is another reason why counsel frequently recommends, and courts approve, settlements. See e.g. Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation). This consideration applies with full force to this case. Further litigation would require additional motion and discovery practice, and the risk, time and expense associated with trial and possible appeals. Trial of this action alone would consume a significant amount of time and require the expenditure of hundreds of thousands of dollars in additional costs and attorney time. As such, the costs of further litigation become considerable in terms of both time and money with

uncertain results. Under these circumstances, the benefits of a guaranteed recovery today, rather than an uncertain result years in the future, should be readily apparent.

### D. There is no Opposition to the Settlement.

No Class Member objected to the Settlement, and no Class Member opted out. The lack of objectors indicates support for the Settlement and strongly favors a finding that it is "fair and reasonable." American Civil Liberties Union v. United States Gen. Servs. Admin., 235 F. Supp. 2d 816, 819 (N.D.Ill.2002). Courts have ruled that the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements" is "strong circumstantial evidence favoring settlement." In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000); Hispanics United of DuPage County v. Vill. of Addison, 988 F.Supp. 1130, 1169 (N.D.Ill.1997) (finding settlement fair where a small fraction of class members objected). Here, 100% of Class Members have neither opted out nor filed objections to the proposed Settlement. This, too, is a factor in favor of the final approval of the Settlement.

### E. The Opinion of Competent and Experienced Counsel Favors Settlement.

Where Class Counsel is qualified, courts heavily rely on their opinion that the settlement is fair, reasonable and adequate, especially where discovery and settlement negotiations are thorough and extensive. See Isby, 75 F.3d at 1200. Here, Class Counsel, who is experienced and knowledgeable in wage and hour class action litigation, is intimately familiar with the strengths and weaknesses of this case. (Ex. 2 – Manewith Decl. ¶¶ 6-9, 11-16.) Based on their extensive vetting of the legal and factual issues, it is Class Counsel's judgment that the Settlement is fair, reasonable and adequate. (Ex. 2 – Manewith Decl. ¶¶ 13-16, 30.) Class Counsel reached its opinion based on their experience, an intimate knowledge of the facts and the legal issues in this case, and a comprehensive analysis of the strengths, weaknesses and value

of the claims and defenses balanced against the risks, time, costs and expense of further protracted litigation, discovery and appeals. (Ex. 2 – Manewith Decl. ¶ 16.)

      **F.    The Stage of Proceedings and Discovery Completed Heavily Weigh in Favor of Final Approval of the Settlement.**

The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the merits of the case, potential damages, the probable course of the litigation absent settlement, and Defendants' ability to pay a judgment after protracted litigation. Specifically, here significant informal discovery has taken place. Defendants provided Plaintiffs' counsel with data relating to damages – including the number of employees in the class, hours worked by the putative class members, and wages paid per Defendant per year to the putative class members. Plaintiffs' counsel also interviewed members of the potential class regarding their wages, hours worked, and Defendants' pay practices. Class counsel conducted an extensive analysis of the data and other records in order to determine that the settlement was fair to all Class Members. Had the case not resolved, the Parties were in a position to promptly complete discovery and move forward with a motion for class certification and dispositive motions. As a result, the Parties negotiated the Settlement with complete knowledge regarding the strengths and weaknesses of the case and the benefits of settlement.

      **G.    The Settlement was the Result of Arm's Length Negotiations, Without any Hint of Collusion.**

There is plainly no collusion or fraud with respect to this proposed Settlement. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> \* \* \*

10

> The initial presumption of fairness of a class settlement may be established by showing:
>
> > a. That the settlement has been arrived at by arm's length bargaining;
> >
> > b. That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and,
> >
> > c. That the proponents of the settlement are counsel experienced in similar litigation.

Newberg §11.41 at 11-88, 11-91. See also City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's length negotiations by experienced counsel after thorough investigation and analysis. (Ex. 2 – Manewith Decl. ¶¶ 12-14.) The foregoing demonstrates that the proposed settlement is fair and reasonable.

## IV. THE UNOPPOSED ATTORNEYS' FEES AND COSTS OF 1/3 OF THE COMMON FUND ARE REASONABLE AND SHOULD BE AWARDED

The Settlement Agreement provides that one-third of the Gross Settlement Fund shall be paid to Class Counsel as attorneys' fees and reimbursement of necessary litigation expenses and costs. The fee provision in the Settlement Agreement was not objected to by any Class Member, and agreed to by the Defendants. It is well established that so long as the terms of the Agreement are reasonable and no objections have been raised, the Court should approve the settlement terms agreed upon by the parties. Armstrong v. Bd. of Sch. Dirs., 616 F.2d 305, 315 (7th Cir.1980).

Moreover, the Seventh Circuit endorses the percentage of the common fund method for awarding attorneys' fees in class cases. See Taubenfeld v. AON Corp., 415 F.3d 597, 599-600 (7th Cir. 2005); In re Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation,

11

280 F.R.D. 364 (N.D. Ill. Nov. 16, 2011) (citation omitted). To that end, one-third of the Common Fund is regularly awarded as attorneys' fees and costs by the Northern District of Illinois in wage and hour cases. See e.g. Leon v. El-Milagro, Inc., Case No. 11 C 4255 (D.E. 71) (awarding 1/3 of common fund in overtime case); Cardenas v. John B. Sanfilippo & Son, Inc., Case No. 10-CV-01354 (D.E. 84) (awarding 1/3 of common fund in overtime case); Acosta, et al. vs. Scott Labor, et al., Case No. 05 C 2518 (D.E. 120) (awarding 33 1/3% of common fund in overtime case); Yon v. Positive Connections, Inc., Case No. 04 C 2680 (D.E. 69) (awarding 33% of the common fund in overtime case); Sanchez v. Stampede Meat, Inc., Case No 02 C 5452 (D.E. 70) (awarding 33 1/3% of common fund in overtime case); Gonzalez v. Labor Network, Case No. 05 C 4864 (D.E. 137) (awarding 33 1/3% of common fund in overtime case); Perugachi v. Valet Parking Serv., Inc., Case No. 04 C 1783 (D.E. 60) (awarding 33% of the common fund in overtime case); Alejandro v. Surestaff, Inc., Case No. 04 C 2889 (D.E. 33) (awarding 33% of the common fund in overtime case); Aguirre et al v. Central Continental Bakery, Inc., Case No. 05 C 2013 (D.E. 54) (awarding 33% of the common fund in overtime case); Herrera v. Chicago Mattress, Inc., Case No. 06 C 1872 (D.E. 49) (awarding 33% of the common fund in overtime case); Flores v. Jorge Arteaga Corp., Case No. 05 C 2057 (D.E. 53) (awarding 33 1/3% of common fund in minimum wage and overtime case); Ortegon v. Staffing Network, Inc., Case No. 06 CH 12679, Order dated July 24, 2009, (awarding 33% of common fund in IDTLSA and overtime case); Perezchica, et al. vs. Eastco Int'l Corp., et al, Case No. 07 CH 04726, Order dated March 18, 2008 (awarding 33 1/3% of common fund in overtime case). Thus, given this precedent and practice, a one-third recovery here is reasonable.

Furthermore, Class Counsel is highly experienced representing employees in employment litigation generally, and in wage and hour matters specifically. Alejandro Caffarelli is one of the

founding shareholders of Caffarelli & Siegel Ltd. and the Past President of NELA-Illinois, the largest plaintiff employment lawyers' group in Illinois. Prior to becoming President, he served for many years on the Board of Directors. With over seventeen (17) years of experience representing employees, Mr. Caffarelli has appeared in over 100 cases filed in the U.S. District Court for the Northern District of Illinois alone, where he has first-chaired a number of jury trials, as well as argued before the Seventh Circuit Court of Appeals. In recognition of his achievements, Mr. Caffarelli has been awarded the highest "AV" rating in ethics and ability since 2008 by LexisNexis' Martindale-Hubbell, one of the oldest and most respected peer-review based rating services for attorneys. In 2010, Mr. Caffarelli was named a "Rising Star" by Super Lawyers Magazine. Since 2011, he has been named an Illinois "Super Lawyer" in the area of Employment Litigation on behalf of employees. Each year, only a very small percentage of Illinois attorneys receive the honor of being named a Super Lawyer. Mr. Caffarelli is frequently invited to speak before numerous lawyers' groups, including the American Bar Association section of Labor and Employment, the National Employment Lawyers' Association, the Chicago Bar Association, and the American Immigration Lawyers' Association.

 Marc Siegel, who has also been named an Illinois "Super Lawyer" since 2009, including one of Illinois' "Top 100" lawyers in all fields in 2012-2014, and rated "AV" by Martindale-Hubbell since 2008, has primarily represented employees in a variety of employment matters, including wage and hour cases in general, and class and/or collective actions in particular. Mr. Siegel has represented employees in more than sixty cases filed under state and federal wage and hour laws, and represented countless other employees in wage and hour matters that were resolved prior to filing a complaint. Mr. Siegel has also spoken to lawyers and non-lawyers alike about wage and hour cases around the country and in national continuing legal education

conferences. Prior to founding Caffarelli & Siegel Ltd., both Mr. Caffarelli and Mr. Siegel worked at the management-side firm of Laner, Muchin, Dombrow, Becker, Levin & Tominberg Ltd.

Bradley Manewith likewise has extensive experience with wage and hour litigation. Mr. Manewith has over ten years of experience representing employees in wage and hour cases, both on an individual and class/collective basis. His experience includes approximately fifty cases filed under state and federal wage and hour laws, a number of which involved "rounding" issues. He currently is a member of NELA-Illinois's Board of Directors. In 2013 and 2014, Mr. Manewith was named a "Rising Star" by Super Lawyers Magazine.

Caffarelli & Siegel Ltd. previously has been approved as Class Counsel in the U.S. District Court for the Northern District of Illinois, and has consistently received fee and cost awards equaling one-third of the common fund. See e.g. Trevino v. Renaissance Roofing, Inc., No. 12-cv-00024 (N.D. Ill.) (1/3 of the common fund awarded as fees and costs); Leon v. El-Milagro, Inc., No. 11 C 4255 (N.D. Ill.) (1/3 of the common fund awarded as fees and costs); Cardenas et al. v. John B. Sanfilippo & Son, Inc., No. 10-CV-01354 (N.D Ill.) (1/3 of the common fund awarded as fees and costs); Barreda, et al. v. Prospect Airport Servs., Inc., No. 08 C 03239 (N.D. Ill.) (1/3 of the common fund awarded as fees and costs), and Sanchez, et al. v. Stampede Meat, Inc., et al., No. 02 C 5452 (N.D. Ill.) (1/3 of the common fund awarded as fees and costs). Class Counsel's specific expertise in wage and hour cases contributed to a favorable resolution of this case. Class Counsel used the knowledge derived from these other cases in determining what would be a fair settlement for the individuals who worked for Defendants.[1]

---

[1] Caffarelli & Siegel Ltd. will be splitting into two separate law firms as of November 1, 2014. Messrs. Siegel and Manewith through their successor law firm, The Siegel Law Group Ltd., and Mr. Caffarelli through his successor law firm, Caffarelli & Associates Ltd., will continue as class counsel, and will administer final payment of the settlement funds to the Claimants. (Ex. 2 – Manewith Decl. ¶ 1 n.1.)

### V. A SERVICE PAYMENT TO THE NAMED PLAINTIFFS IS WARRANTED BY THE OUTSTANDING RESULTS

In their Motion for Preliminary Approval, the Parties informed the Court of their intention to seek Service Payments for the Named Plaintiffs in addition to any payments they will receive as a pro rata share as a Claimant of the Settlement Class to acknowledge their risks, service, time expended and substantial benefits to the class. (D.E. 34 at 4, 6.) The Class Notice advised that the Parties would request the amount of $2,500.00 for each Named Plaintiff, Michelle Singer and Alyson Singer. Likewise, the Class Notice informed Class Members that a Service Payments for the Named Plaintiffs would be requested and paid out of the Maximum Settlement Amount. No member of the Class objected to the Service Payment. "Incentive awards are justified when necessary to induce individuals to become named representatives." In re Synthroid Marketing Litigation, 264 F.3d 712, 722-73 (7th Cir. 2001). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts have approved incentive awards as high as $25,000 per named plaintiff. American International Group, Inc. v. ACE INA Holdings, Inc., 2012 WL 651727, at *16-17 (N.D. Ill. Feb. 28, 2012). See also Berger v. Xerox Corp. Ret. Income Guar. Plan, No. 00-584-DRH, 2004 WL 287902, at *3, (S.D. Ill. Jan. 22, 2004) (awarding $20,000 incentive award per named plaintiff); Schmidt v. Smith & Wollensky LLC, No. 09 C 2752, D.E. 78 (N.D. Ill. Aug. 18, 2011) (awarding $10,000 incentive award in Illinois Minimum Wage Law case). The role of the Named Plaintiffs in this litigation was crucial. They sacrificed their personal time and effort to prosecute this lawsuit on behalf of their fellow current and former employees. They reviewed and approved the Complaint. They met, conferred and regularly

15

corresponded with Class Counsel. As such, the Parties request that the Court grant their request for the Service Payments in the total amount of $5,000 - $2,500 for each Named Plaintiff – as being fair and reasonable.

## VI. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (1) grant final approval of the Settlement; (2) find the Settlement to be fair, reasonable, adequate, and in the best interests of the Class and Collective Members; (3) award one-third of the common fund to Class Counsel as attorneys' fees and costs; (4) approve the Service Payments to the Named Plaintiffs; (5) release and bar any further action on Released Claims under the IMWL and IWPCA by Class Members, none of whom opted out of the Class Settlement; (6) release and bar any further action on Released Claims under the FLSA by the Collective members; and (7) dismiss Plaintiffs', the Collective's and the Class's claims with prejudice, without any cost to any of the parties except as provided in the Settlement Agreement.

Dated: October 30, 2014                             Respectfully submitted,

Alejandro Caffarelli, #06239078         MICHELLE SINGER, and ALYSON
Bradley Manewith, #06280535            SINGER, on behalf of themselves and all
Caffarelli & Siegel Ltd.                           other similarly situated persons, known and
Two Prudential Plaza                              unknown,
180 North Stetson Ste. 3150
Chicago, IL  60601
Tel. (312) 540-1230                               By: /s/  Bradley Manewith
Fax (312) 540-1231                                      Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused a copy of the attached document, **Agreed Motion for Final Approval of Class Settlement**, to be served upon the parties below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on October 30, 2014.

Kristi Lynn Nelson
Jennifer Marie Schwartz
Chen Nelson Roberts Ltd.
203 North LaSalle Street, 15th Floor
Chicago, IL 60601

Gary R. Clark
Brian A. Hartstein
Quarles & Brady LLP
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654

    /s/ Bradley Manewith
    Bradley Manewith
    Caffarelli & Siegel Ltd.
    Two Prudential Plaza
    180 N. Stetson, Suite 3150
    Chicago, IL 60601